GB4AMONPps

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        (S3) 16-cr-617 (VEC)

5    JHEFFERSON ESCOBAR MONTANO,

6              Defendant.

7    ------------------------------x

8                                   New York, N.Y.
                                    November 4, 2016
9                                   2:35 p.m.

10

     Before:
11
                      HON. VALERIE E. CAPRONI
12
                                          District Judge
13

14                        APPEARANCES
     AMANDA L. HOULE, ESQ.
15        Assistant United States Attorney

16   BRADLEY L. HENRY, ESQ.
          Attorney for Defendant
17   The Henry Law Firm PLLC

18
     Also Present:  Paula Gold
19                  Spanish Interpreter

20

21

22

23

24

25
```

GB4AMONPps

1          (In open court)

2          THE CLERK:  In the matter of the United States of

3   America v. Jhefferson Escobar Montano, with Spanish interpreter

4   Paula Gold.

5          All counsel please identify yourselves for the record.

6          MS. HOULE:  Good afternoon, your Honor.  Amanda Houle

7   for the government.

8          THE COURT:  Good afternoon.

9          MR. HENRY:  Good afternoon, your Honor.  Brad Henry

10  for Mr. Escobar Montano.

11         THE COURT:  Good afternoon.

12         OK.  Mr. Henry, does your client have an application?

13         MR. HENRY:  He does, your Honor.  He would like to

14  withdraw his plea of not guilty and enter a plea of guilty

15  today to the S3 information, which charges a violation of 46

16  United States Code 70503 and 70506.

17         THE COURT:  OK.  Mr. Escobar Montano, please sit down.

18         Your attorney has told me that you wish to waive

19  indictment and plead guilty.  Before that can happen, I need to

20  make sure -- I need to ask you some questions so I can be sure

21  that you understand the rights that you are giving up, that you

22  fully understand the consequences of your plea, and that you're

23  pleading guilty because you are guilty and not for any other

24  reason.

25         Mr. Brantley, please swear in the defendant.

GB4AMONPps

1           THE CLERK:  Yes, your Honor.

2           (Defendant sworn)

3           THE CLERK:  Please state your full name and spell your

4     last name slowly for the record.

5           THE DEFENDANT:  (Through interpreter) Jhefferson

6     Escobar Montano.

7           THE CLERK:  Please spell your last name.

8           THE DEFENDANT:  Jhefferson is --

9           MR. HENRY:  Your Honor, if I may, Mr. Montano is

10    illiterate, and so he doesn't read or write.

11          THE COURT:  OK.

12          THE DEFENDANT:  May I sit?

13          THE COURT:  Yes.

14          Mr. Escobar Montano, how old are you?

15          THE DEFENDANT:  27.

16          THE COURT:  How far did you go in school?

17          THE DEFENDANT:  No, I didn't go to school.

18          THE COURT:  Not at all?

19          THE DEFENDANT:  No, not at all.

20          THE COURT:  Are you able to read and understand

21    English?

22          THE DEFENDANT:  No, no.

23          THE COURT:  Are you having any difficulty

24    understanding the interpreter?

25          THE DEFENDANT:  I don't understand.  I don't

GB4AMONPps

 1    understand what's being said.

 2            THE COURT:  OK.  Can you understand what this lady is

 3    saying to you?

 4            THE DEFENDANT:  Oh, yes, yes.

 5            THE COURT:  All right.  Mr. Escobar Montano, have you

 6    now, are you now, or have you recently been under the care of a

 7    doctor or a psychiatrist?

 8            THE DEFENDANT:  Yes.  Well, no -- well, once I had

 9    like an attack, do you understand?

10            THE COURT:  Yes.

11            THE DEFENDANT:  I had like an attack and I lost

12    consciousness.

13            THE COURT:  What type of an attack?

14            THE DEFENDANT:  It was an attack, like, you know,

15    where you lose consciousness.  I have a problem like I, I know

16    something now but then I don't remember it, like -- or I

17    can't -- I can't catch on.

18            THE COURT:  When was the attack?

19            THE DEFENDANT:  That's when I was about ten years old.

20            THE COURT:  A long time ago.

21            THE DEFENDANT:  Yes, a long time ago.

22            THE COURT:  Have you ever been treated or hospitalized

23    for any mental illness or any type of addiction, including drug

24    or alcohol addiction?

25            THE DEFENDANT:  No.

GB4AMONPps

1              THE COURT:  In the past 24 hours, have you taken any

2     drugs, medicines, or pills, or have you consumed any alcohol?

3              THE DEFENDANT:  Well, what they gave to me was sort of

4     like a, like a tranquilizer, like --

5              THE COURT:  When was that?

6              THE DEFENDANT:  Well, when I have it, you mean, and

7     then some time --

8              THE COURT:  When you have the attack.

9              THE DEFENDANT:  Yes.

10             THE COURT:  Between yesterday and today, have you

11    taken any medicine?

12             THE DEFENDANT:  No.

13             THE COURT:  Any pills?

14             THE DEFENDANT:  Well, no, just some kind of herb that

15    my grandmother had given me, but she -- she's deceased.

16             THE COURT:  No, but I'm talking about in the last day,

17    since yesterday.

18             THE DEFENDANT:  No.  I just get pills for arthritis.

19    They didn't give me pills for that, no.

20             THE COURT:  Is your mind clear today?

21             THE DEFENDANT:  Yes, a little bit.

22             THE COURT:  Do you understand what's going on?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Why are you here?

25             THE DEFENDANT:  Because I'm being charged.

GB4AMONPps

1              THE COURT:  But why particularly are you here?  What

2       are you going to do today?

3              THE DEFENDANT:  I'm going to plead, and sign.

4              THE COURT:  OK.  Your attorney has told me that you

5       wish to plead guilty.  Is that correct?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Have you had the opportunity to talk about

8       the consequences of pleading guilty with your attorney?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Are you satisfied with your attorney?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you think he's doing a good job?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Does either attorney have any question

15      about the defendant's competence to waive indictment and enter

16      a guilty plea at this time?  Ms. Houle?

17             MR. HENRY:  No, your Honor.

18             THE COURT:  Mr. Henry?

19             MR. HENRY:  I do not, your Honor.

20             THE COURT:  On the basis of the defendant's responses

21      to my questions and my observations of his demeanor, I find

22      that he is fully competent to waive indictment and enter an

23      informed guilty plea at this time.

24             Mr. Escobar Montano, have you received a copy of the

25      information that is numbered (S3) 16-cr-617?

GB4AMONPps

1              THE DEFENDANT:  Yes.

2              THE COURT:  Did someone read it to you?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Have you discussed it with your attorney?

5              THE DEFENDANT:  Yes.

6              THE COURT:  This document is what we call a felony

7  information.  Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  This document was issued by the United

10  States Attorney, the prosecutor.  Because the charge against

11  you is a serious crime, it's a felony, you have the right to

12  require the government to present evidence to a grand jury to

13  see whether the grand jury would vote to charge you.  Do you

14  understand that?

15              THE DEFENDANT:  Yes.

16              THE COURT:  If the grand jury voted to charge you, the

17  document that it would issue would be called an indictment, and

18  it would be signed by the foreperson of the grand jury and the

19  United States Attorney, or the prosecutor.  Do you understand

20  that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  But you do not have to give up your right

23  to an indictment.  Do you understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you want to give up your right to have

GB4AMONPps

1    your case presented to a grand jury?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Did you sign the waiver of indictment

4    form?

5                THE DEFENDANT:  Yes.  Yes, yes.

6                THE COURT:  OK.  Before signing it, did you discuss it

7    with your attorney?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Did anybody threaten you or force you to

10   give up the right to be indicted?

11               THE DEFENDANT:  No.

12               THE COURT:  I find that the defendant has knowingly

13   and voluntarily waived his right to be indicted by a grand

14   jury.  Mr. Brantley will witness the form and the information

15   will be accepted for filing.  The waiver is marked as Court

16   Exhibit No. 1.

17               Do you want me to read out loud the information to

18   you?

19               THE DEFENDANT:  No.

20               THE COURT:  You were charged with one count of

21   conspiring to distribute and possess with intent to distribute

22   cocaine.  Do you understand what you're being charged with?

23               THE DEFENDANT:  Yes, a little bit.

24               THE COURT:  OK.  Well, we'll talk about it a little

25   more.  Before I accept your guilty plea, I have to be sure that

GB4AMONPps

1    you understand the rights that you are going to be giving up if

2    you plead guilty.  Please listen to my questions carefully.

3              THE DEFENDANT:  Yes.

4              THE COURT:  If you don't understand what I'm asking,

5    just tell me that and I'll either rephrase it or give you an

6    opportunity to talk to your attorney.  OK?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Your attorney has said that you wish to

9    plead guilty.  You have the right to plead not guilty and to

10   continue to plead not guilty.  Do you understand that?

11             THE DEFENDANT:  Yes, yes.

12             THE COURT:  You have a right to be represented by an

13   attorney at trial and at every other stage of the proceeding.

14   If you can't afford an attorney, an attorney will be appointed

15   to represent you at no cost.  Do you understand that?

16             THE DEFENDANT:  Yes, yes, I do.

17             THE COURT:  You have the right to a speedy and public

18   trial by a jury on the charges against you, which are contained

19   in the information.  Do you understand that?

20             THE DEFENDANT:  No.

21             THE COURT:  You have a right to a trial.  You know

22   what a trial is, right?

23             THE DEFENDANT:  A trial, like what?

24             THE COURT:  Like we would be in a courtroom and the

25   government would call people and witnesses would come and they

GB4AMONPps

1   will say what they know, and then your attorney could ask them

2   questions, and then the jury would decide whether you've been

3   proven -- whether the government has proved that you're guilty.

4   That's what a trial is.  Do you understand that?

5               THE DEFENDANT:  Yes, a little bit.

6               THE COURT:  OK.  So you have a right to a trial, and

7   that's normally how the government proves someone is guilty of

8   a crime, that they prove it by evidence in court.  What you're

9   offering is, you're going to say, I'm going to plead guilty, so

10  the government doesn't have to do that.  Do you understand

11  that?

12              THE DEFENDANT:  Yes, yes.

13              THE COURT:  OK.  So you understand that you have a

14  right, though, to make the government put on its evidence to a

15  jury.  You understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  If you went to trial, you would be

18  presumed innocent, and the government would be required to

19  prove, beyond a reasonable doubt, that you are guilty.  You

20  would not have to prove that you were innocent at trial.  Do

21  you understand that?

22              THE DEFENDANT:  Yes.  Yes, a little bit.

23              THE COURT:  If you went to trial, you would have the

24  right to see and hear all of the government's witnesses, and

25  your attorney could ask those witnesses questions that he

GB4AMONPps

1    thinks would help you.  Do you understand that?

2             THE DEFENDANT:  Well, no, not a lot.

3             THE COURT:  OK.  So at a trial, people who have

4    information about whether you're guilty of the crime that

5    you're charged with would come to court.  They would sit right

6    in this chair.  There would be 12 people sitting in those

7    chairs.  The witnesses who know what you did or have

8    information about what you did would answer questions from the

9    government.  Then your attorney could ask them questions, to

10   try to show that they don't have the facts right.  So you have

11   the right to have that process go forward.  Do you understand

12   that?

13            THE DEFENDANT:  May I ask --

14            THE COURT:  Sure.

15            THE DEFENDANT:  -- say something?

16            THE COURT:  Yes.

17            THE DEFENDANT:  So how does that work?  It's like if

18   somebody doesn't accept, like what you're saying?

19            THE COURT:  I'm not quite sure I understand your

20   question.

21            THE DEFENDANT:  See, how can I say this.  It's like if

22   somebody doesn't accept, like what you're saying, so I would

23   plead guilty.

24            THE COURT:  Correct.  If you didn't plead guilty, this

25   is what would happen.

GB4AMONPps

1            THE DEFENDANT:  Oh, yes.

2            THE COURT:  OK.  You understand that.

3            THE DEFENDANT:  Yes, I do.

4            THE COURT:  If you went to trial, so if you don't

5     plead guilty and you go to trial --

6            THE DEFENDANT:  Yes.

7            THE COURT:  -- you would have the right to testify.

8     You could get on stand and tell your side of the story, if you

9     wanted to.  You couldn't be forced to testify if you didn't

10    want to.  And if you chose not to testify, I would tell the

11    jury, the people who are going to decide whether you're guilty

12    or not, that they couldn't hold against you that you did not

13    testify.  Do you understand that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  If you went to trial, so if you don't

16    plead guilty and go to trial, there will be a jury, and it will

17    be composed of 12 people that are chosen from the community,

18    and all 12 people would have to agree that the government has

19    proved that you are guilty before they could find you guilty.

20    Do you understand that?

21            THE DEFENDANT:  Yes.

22            THE COURT:  If you were convicted at trial, you would

23    have the right to appeal the verdict, to ask another court to

24    consider whether the jury got the answer right.  Do you

25    understand that?

GB4AMONPps

1            THE DEFENDANT:  Yes, yes.

2            THE COURT:  If you plead guilty and I accept your

3    plea, you will be giving up each right that I have just

4    described to you, and you will be found guilty just because you

5    say you're guilty.  Do you understand that?

6            THE DEFENDANT:  Yes, yes.

7            THE COURT:  Do you understand that you can change your

8    mind, including right now, and say that you want to go to

9    trial?

10            THE DEFENDANT:  Yes, yes.

11            THE COURT:  OK.  As I've mentioned, you are charged

12    with conspiracy to distribute and possess with intent to

13    distribute cocaine.  Do you understand what you're being

14    charged with?

15            THE DEFENDANT:  What are you saying?

16            THE COURT:  Do you understand that what -- what you're

17    being charged with, the crime --

18            THE DEFENDANT:  Oh, yes.  Yes.

19            THE COURT:  -- is conspiracy to possess with intent to

20    distribute cocaine?

21            THE DEFENDANT:  Yes, yes.

22            THE COURT:  OK, Ms. Houle.  What are the elements of

23    the offense?

24            MS. HOULE:  First, your Honor, that two or more people

25    in some way agreed to try to accomplish a shared and unlawful

GB4AMONPps

1   plan to violate the Maritime Drug Law Enforcement Act by

2   possessing cocaine on a vessel with intent to distribute it;

3   second, that the defendant knew the unlawful purpose of the

4   plan and willfully joined in it; and, third, that the object of

5   the unlawful plan was to possess with the intent to distribute

6   cocaine.

7            THE COURT:  OK.  Mr. Escobar Montano, if you don't

8   plead guilty, the government would have to prove each element

9   that the prosecutor just laid out beyond a reasonable doubt.

10   Do you understand that?

11            THE DEFENDANT:  Yes, I do.

12            THE COURT:  OK.  The maximum possible penalty, so the

13   most severe punishment that can be imposed for this crime, is a

14   term of imprisonment of up to 20 years, a term of supervised

15   release -- and I'll tell you in a minute what supervised

16   release is -- a term of supervised release that must be at

17   least three years and could be as long as the rest of your

18   life; a fine of up to $1 million or two times the financial

19   gain from the crime or two times the financial loss from the

20   crime, whichever one of those numbers is the biggest.  There's

21   also a $100 mandatory that has to be imposed, a fine of $100.

22   Do you understand that?

23            THE DEFENDANT:  Yes.

24            THE COURT:  All right.  Supervised release means that

25   you're subject to monitoring and supervision after your release

GB4AMONPps

1    from prison.  Do you understand that?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  There are terms and conditions of

4    supervised release that you have to comply with.  If you don't

5    comply or obey those terms and conditions, you can be return to

6    prison without a jury trial.  Do you understand that?

7                    THE DEFENDANT:  Yes.

8                    Excuse me.  May I?

9                    THE COURT:  Yes.

10                   THE DEFENDANT:  I -- can you repeat that for me,

11   because I didn't quite understand.  I am sorry for being rude.

12                   THE COURT:  No, no, no, you're not being rude at all.

13   You should always ask.  This is very important.  And you need

14   to understand what you're agreeing to here.

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  OK.  So there are terms and conditions, so

17   there are requirements, of supervised release, things like:

18   You can't commit another crime.  Depending on what the

19   circumstances are, you may have to report to a probation

20   officer.  If you don't do what you're required to do, you can

21   be sent back to prison.

22                   THE DEFENDANT:  Oh, yes.

23                   THE COURT:  And if you're sent back to prison, you are

24   not entitled to a jury trial on the violation of supervised

25   release.  Do you understand that?

GB4AMONPps

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you are on supervised release and you

3    violate the conditions and you are sent back to prison, that

4    new prison term could be for all or part of the period of

5    supervised release.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Even if you've served part of the term,

8    you could still be sent to jail for the whole term.  Do you

9    understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  As part of your sentence, I can also order

12   you to pay restitution, or to pay back the injury of anybody

13   who is injured as a result of your crime.  Do you understand

14   that?

15         THE DEFENDANT:  No, I didn't understand.

16         THE COURT:  OK.  If anybody was injured as a result of

17   your crime, we have something called restitution.  And

18   restitution means that you would pay the person who was

19   injured, to pay them back for being injured.  Do you understand

20   that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  If I accept your guilty plea and I adjudge

23   you guilty, that adjudication or that finding can deprive you

24   of valuable civil rights, such as the right to vote, the right

25   to hold public office, the right to serve on a jury, the right

GB4AMONPps

1    to possess any type of a gun, and the right to hold certain

2    professional licenses.  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  OK.  Mr. Escobar Montano, are you a United

5    States citizen?

6              THE DEFENDANT:  No, never.  No, no.

7              THE COURT:  Where are you a citizen?

8              THE DEFENDANT:  I am from Ecuador.

9              THE COURT:  Ecuador.  Does he have any immigration

10   status at all?

11             MR. HENRY:  No, your Honor.

12             THE COURT:  Mr. Henry, have you discussed with your

13   client the likelihood that he is going to be deported at the

14   end of his prison term?

15             MR. HENRY:  I have, your Honor.

16             THE COURT:  Mr. Escobar Montano, has your attorney

17   told you that after you serve your sentence, in all likelihood

18   you're going to be sent back to Ecuador?

19             THE DEFENDANT:  Yes, yes.

20             THE COURT:  OK.  Is that what you want to have happen?

21             THE DEFENDANT:  Oh, yes, to go back to my country.

22             THE COURT:  Well, even if you change your mind and you

23   decide you want to stay in the United States, in all likelihood

24   you are going to be sent back to Ecuador.

25             THE DEFENDANT:  Yes.

GB4AMONPps

1          THE COURT:  So if that happens and it's not what you

2    want at that time, that is not a basis for you to come back and

3    try to withdraw your guilty plea.  Do you understand that?

4          THE DEFENDANT:  No.

5          THE COURT:  OK.  Right now you want to go home.

6    Right?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Let's suppose that you change your mind

9    and that, while you're in prison, you decide you want to stay

10   in the United States when you get out of prison.

11         THE DEFENDANT:  Oh, you mean if I want to stay here?

12         THE COURT:  Correct.

13         THE DEFENDANT:  Oh, no.  I want to go back to my

14   country.

15         THE COURT:  OK.  Well, even if you change your mind,

16   that will not be a reason, that's not a basis for you to

17   withdraw your guilty plea.  Do you understand that?

18         THE DEFENDANT:  I couldn't -- withdraw it?  What is

19   that?

20         THE COURT:  Take it back.

21         THE DEFENDANT:  Well, I don't know how that would be.

22   I'm pleading guilty.

23         THE COURT:  OK.  You're going to plead guilty even if

24   you end up being returned to Ecuador against your will.  Do you

25   understand that?

GB4AMONPps

1          THE DEFENDANT:  Yes.  Yes, I'm pleading guilty.

2          THE COURT:  There is some possibility that you may

3    stay in the United States for some period of time waiting to be

4    deported.  Do you understand that?  After you get out of jail.

5          THE DEFENDANT:  Yes.

6          THE COURT:  If that happens, so that you get out of

7    jail but they haven't deported you yet, during that period that

8    you're in the United States, you will be on supervised release.

9    Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And you have to --

12         THE DEFENDANT:  I'm sorry, your Honor.  So if I serve

13   my time, then they're going to send me to my country.

14         THE COURT:  They will, but there might be a delay.

15         THE DEFENDANT:  Oh, yes.

16         THE COURT:  And during that period of time, you have

17   to comply with the rules of your supervised release.  Do you

18   understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  If you get deported, which you probably

21   will be, and you come back to the United States without the

22   permission of the government, that's a crime.  Do you

23   understand that?

24         THE DEFENDANT:  Yes.  No, I'm never coming back here.

25         THE COURT:  OK.  Well, if you change your mind and you

GB4AMONPps

come back without permission, that's a crime and it could also
be a violation of the terms of supervised release. Do you
understand that?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you understand that there is something
called sentencing guidelines that I have to consider in
determining the appropriate sentence or the appropriate
punishment in your case?

        THE DEFENDANT:  What does "guidelines" mean?  When
they stop me?

        THE COURT:  So guidelines are, it's a way --

        THE DEFENDANT:  Oh.  Can -- can he tell me?  Because
then I don't understand.

        MR. HENRY:  If I may have just one second, your Honor.

        (Defense counsel and client confer)

        THE DEFENDANT:  I apologize.

        THE COURT:  No, please don't apologize.  This is
important.  It's just a lot of rules and we have to make sure
that you understand what you're doing.  OK?

        THE DEFENDANT:  Yes.

        THE COURT:  OK.  Do you understand that there are
sentencing guidelines that I have to consider in determining
the appropriate punishment in your case?

        THE DEFENDANT:  Yes.

        THE COURT:  Have you talked to your attorney about how

GB4AMONPps

1  the guidelines will work in your case?

2                THE DEFENDANT:  Yes.

3                THE COURT:  I will have to calculate the guideline

4  range and consider that range in determining your sentence.  Do

5  you understand that?

6                THE DEFENDANT:  Yes, yes.

7                THE COURT:  In addition to doing that, I also have to

8  consider a number of other factors that are required by federal

9  law.  Federal law requires me to consider a number of factors

10  about you and about the offense in determining what your

11  sentence will be.  Do you understand that?

12                THE DEFENDANT:  Yes.

13                THE COURT:  So even after I calculate a guideline

14  range, your sentence could be above that or below that.  Do you

15  understand that?

16                THE DEFENDANT:  Yes.

17                THE COURT:  If your attorney or anyone else has

18  attempted to estimate or predict what your sentence will be,

19  they could be wrong.  Do you understand that?

20                THE DEFENDANT:  Yes.

21                THE COURT:  It's perfectly appropriate for you and

22  your attorney to talk about how your sentence will be

23  determined, but nobody can tell you for sure what your sentence

24  will be.  That's my job, and I can't do that until I do a bunch

25  of other things.  Do you understand that?

GB4AMONPps

1              THE DEFENDANT:  Yes.

2              THE COURT:  So nobody, not even I, can today tell you

3     what your sentence will be.  Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  I stress this because it's important for

6     you to understand that if your sentence is different from what

7     anyone has estimated or predicted it will be or what you hope

8     it will be, that will not be a grounds for you to take back

9     your guilty plea.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  If you are sentenced to prison, there is

12    no parole.  Therefore you can't be released early on parole.

13    Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  I've been given a copy of a plea

16    agreement, which has been marked as Court Exhibit 2.  Did you

17    sign the plea agreement?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Did someone read it to you before you

20    signed it?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you talk about it with your attorney

23    before you signed it?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Other than what's in the plea agreement,

GB4AMONPps

1  has anybody made you any promise?

2          THE DEFENDANT:  Promise?

3          THE COURT:  About the case.

4          THE DEFENDANT:  About the case?  I don't know.  No,

5  no.

6          THE COURT:  Has anyone threatened you or forced you to

7  plead guilty?

8          THE DEFENDANT:  No.

9          THE COURT:  Other than what's in the plea agreement,

10  has anyone promised you anything or offered you anything to

11  plead guilty?

12          THE DEFENDANT:  No.

13          THE COURT:  Has anyone promised you what your sentence

14  will be?

15          THE DEFENDANT:  No.

16          THE COURT:  One of the provision that's in the plea

17  agreement is what's called a waiver of the statute of

18  limitations.  What that means is, if, at some point down the

19  road, for some reason, your conviction is vacated, the

20  government could charge --

21          THE DEFENDANT:  Yes --

22          THE COURT:  -- you then --

23          THE DEFENDANT:  I'm sorry, your Honor.  What does it

24  mean to vacate?

25          THE COURT:  To do away with it, to erase it.

GB4AMONPps

1          THE DEFENDANT:  Oh, to erase it.

2          THE COURT:  So if at some point down the road your

3    conviction is erased, or vacated, the government will be able

4    to charge you at that point in the future with any crime they

5    could charge you with today.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  One of the provisions in your plea

8    agreement is an agreement between the government and you

9    regarding a guidelines calculation.  Do you understand that?

10          THE DEFENDANT:  Yes, a little bit.

11          THE COURT:  Yes, OK.

12          THE DEFENDANT:  A little.

13          THE COURT:  That agreement, that calculation that's in

14    your plea agreement, that is binding on the government -- they

15    can't change their mind -- and it's binding on you -- you can't

16    change your mind -- about that calculation.  Do you understand

17    that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  That agreement that came up with that

20    calculation is binding on you and the government, but it

21    doesn't bind me.  Do you understand that?

22          THE DEFENDANT:  A little bit.

23          THE COURT:  So you and the government agreed that your

24    guideline range is 87 to 108 months of prison.  I'm going to do

25    the same thing they --

GB4AMONPps

1            THE DEFENDANT:  How much is that?

2            THE COURT:  It's about eight years.  I'm going to do

3     the same thing they did, the way they came up with that.  I

4     might come up with a different answer.  It could be above that

5     or below that.  Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  You have also agreed that, so long as your

8     sentence is in that range or below it, so as long as I don't

9     sentence you to more than 108 months in jail, that you will not

10    appeal.  Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  In order to accept your guilty plea, I

13    have to understand what you did that makes you guilty.  So can

14    you tell me what you did that makes you guilty of this crime?

15           THE DEFENDANT:  But I don't know how to read.

16           MR. HENRY:  Your Honor, I think -- so I've written out

17    an allocution for him.  We've had it translated and read to

18    him.  He's nervous and so his short-term memory kicked in.

19    So --

20           THE COURT:  Let me ask, I've already had one of these.

21           MR. HENRY:  Yes, I understand.

22           THE COURT:  So can I perhaps lead him through?

23           MR. HENRY:  You may, your Honor.  I don't think there

24    will be any issue.

25           THE COURT:  There are no quirks to this one?

GB4AMONPps

1          MS. HOULE:  I don't anticipate any, your Honor.

2          THE COURT:  OK.  Mr. Escobar Montano, I understand you

3     were arrested by the Coast Guard when you were on a fast boat.

4     Is that right?

5          THE DEFENDANT:  Yes, yes.

6          THE COURT:  And the fast boat had left from Ecuador.

7     Is that correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And you were there and two other people

10    were on the boat.  Right?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Had someone hired you to take the boat

13    somewhere?

14         THE DEFENDANT:  Yes.  I -- they sought me out.

15         THE COURT:  They found you -- or were they going to

16    pay you?

17         THE DEFENDANT:  Yes, they were.

18         THE COURT:  And did they tell you where you were

19    supposed to take the boat?

20         THE DEFENDANT:  To Guatemala.

21         THE COURT:  So when you got on the boat to leave, did

22    you know --

23         THE DEFENDANT:  Yes.

24         THE COURT:  -- what cargo was on the boat?  Did you

25    know what was in the boat?

GB4AMONPps

```
 1                THE DEFENDANT:  Yes, I knew, but I didn't know the
 2      amount.
 3                THE COURT:  What was the cargo?
 4                THE DEFENDANT:  Drugs.
 5                THE COURT:  It was drugs.  Did you know it was
 6      cocaine?
 7                THE DEFENDANT:  Drugs, yes.  I was told after.
 8                THE COURT:  You were told afterwards.
 9                THE DEFENDANT:  Yes.
10                THE COURT:  When you got on the boat --
11                THE DEFENDANT:  Then I realized -- yes.  I got in a
12      boat.
13                THE COURT:  When, at the time you got on the boat --
14                THE DEFENDANT:  Yes.
15                THE COURT:  -- did you know that there were drugs on
16      the boat?
17                THE DEFENDANT:  Yes.  I was told.
18                THE COURT:  And you knew that you were delivering them
19      to somebody else?
20                THE DEFENDANT:  To Guatemala, yes.
21                THE COURT:  And someone would take them from you in
22      Guatemala?
23                THE DEFENDANT:  They told us -- how can I explain it?
24      I didn't know the people there, but they gave us a direction
25      that we were to follow.
```

GB4AMONPps

1      THE COURT:  OK.  And you understood that at some point

2  you were going to get off the boat and the cocaine was going to

3  go to someone else?  Is that right?

4      THE DEFENDANT:  If I knew that?

5      THE COURT:  Yes.

6      THE INTERPRETER:  May I?

7      THE COURT:  Yes.

8      THE DEFENDANT:  No, no.  No, no, no, no.

9      THE COURT:  Were you going to keep the drugs?

10     THE DEFENDANT:  No, no.

11     THE COURT:  What was going to happen to the drugs?

12     THE DEFENDANT:  I don't know.  I think they were going

13  to receive the drugs there.  I think it was a go-fast boat.

14     THE COURT:  Right.  And then you were going to go back

15  to Ecuador, correct?

16     THE DEFENDANT:  No.  From there to Guatemala, because

17  they had taken out a passport for me.

18     THE COURT:  To go to Guatemala?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Was someone going to receive the cocaine?

21     THE DEFENDANT:  Where?

22     THE COURT:  In Guatemala.

23     THE DEFENDANT:  Yes, but somebody was going to receive

24  it, but I don't know anybody there.

25     THE COURT:  You didn't know who it was going to be.

GB4AMONPps

1            THE DEFENDANT:  No.

2            THE COURT:  OK.  When you got on the boat, did you

3      know that what you were doing was wrong and against the law?

4            THE DEFENDANT:  Yes, I knew.

5            THE COURT:  Did anybody threaten you --

6            THE DEFENDANT:  I was aware.

7            THE COURT:  -- or force you to get on the fast boat?

8            THE DEFENDANT:  No.

9            THE COURT:  Does either attorney want me to make

10     further inquiry?

11           MS. HOULE:  No, thank you, your Honor.

12           MR. HENRY:  No, your Honor.

13           THE COURT:  Mr. Henry, do you know of any valid

14     defense that would prevail at trial or any reason why your

15     client should not be permitted to plead guilty?

16           MR. HENRY:  I do not, your Honor.

17           THE COURT:  Do you believe there is an adequate

18     factual basis to support the plea?

19           MR. HENRY:  Yes, I do.

20           THE COURT:  Ms. Houle, do you believe there is an

21     adequate factual basis to support the plea?

22           MS. HOULE:  I do, your Honor.

23           THE COURT:  Mr. Escobar Montano, how do you plead?

24     Guilty or not guilty?

25           THE DEFENDANT:  Guilty.

GB4AMONPps

1          THE COURT:  Are you pleading guilty voluntarily and of

2     your own free will?

3          THE DEFENDANT:  Yes, guilty.

4          THE COURT:  The information also contains a forfeiture

5     allegation.  What that means is that the government says you

6     have to give up, or give to the government, any property that

7     was used to commit the crime or to help you commit the crime.

8     Do you agree to give that property to the government?

9          THE DEFENDANT:  What kind of property?  Like what kind

10    of --

11         THE COURT:  The boat is the most obvious.

12         THE DEFENDANT:  The boat?

13         THE COURT:  The fast boat and the drugs, and any money

14    that was on board.

15         THE DEFENDANT:  Yes.

16         THE COURT:  You'll give all that to the government?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  I find that there is an

19    adequate factual basis for the plea, that Mr. Escobar Montano

20    understands the rights he is giving up and is waiving those

21    rights knowingly and voluntarily.  I find that Mr. Escobar

22    Montano understands the consequences of his plea, the potential

23    sentence that may be imposed.  Because I find that his plea is

24    entered knowingly and voluntarily and is supported by an

25    independent factual basis for each and every element of the

GB4AMONPps

1   crime charged, I accept his guilty plea.

2         I direct that a presentence investigation be conducted

3   by the Probation Office and that a presentence report be

4   prepared.

5         Mr. Escobar Montano, you are going to be interviewed

6   by someone from the Probation Office.  You can and you should

7   have your attorney with you for that interview.  Anything that

8   you say to the Probation Office should be true and complete.

9   The report that they prepare is very important to me in

10  determining what the appropriate punishment is for you.  So

11  it's important that I have accurate information.

12        THE DEFENDANT:  Yes.

13        THE COURT:  There's going to come a time when a draft

14  report will be prepared.  Your attorney will go over it with

15  you.  It's really important that if anything in it isn't

16  correct, that you tell your lawyer so that he can make sure it

17  gets corrected.

18        THE DEFENDANT:  Yes.  I have a question.  Like

19  incorrect in what way?

20        THE COURT:  Well, maybe it says that you were

21  convicted of a crime in Ecuador and in fact you were never

22  convicted of a crime in Ecuador.  So that would be a mistake,

23  and you would want to correct that.

24        THE DEFENDANT:  OK, yes.

25        THE COURT:  All right.  At the time of sentence, your

GB4AMONPps

 1  attorney and you will have an opportunity to speak.  Do you

 2  understand that?

 3          THE DEFENDANT:  Yes.

 4          THE COURT:  Mr. Henry, I'm going to ask you to get him

 5  interviewed in two weeks, and the government's case should be

 6  given to probation within two weeks.

 7          Do we have a sentencing date?

 8          THE CLERK:  February 17, 2017, at 2:30 p.m.

 9          THE COURT:  OK.  So that's the date that you'll come

10  back to be sentenced.  Do you understand that?

11          THE DEFENDANT:  Yes.  You mean when -- the time --

12  when the time passes?  How long before I come here?

13          THE COURT:  It will be in February, so three months.

14          THE DEFENDANT:  Oh, I see.

15          THE COURT:  OK?  Do you have any questions?

16          THE DEFENDANT:  No.

17          THE COURT:  OK.  All right.  Thank you.

18          Thank you, Mr. Henry.

19          MR. HENRY:  Thank you, your Honor.

20                              o0o

21

22

23

24

25